IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| KENNETH SHAUN TRAYWICK, #177 252, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) CIVIL ACTION NO.: 2:15-CV-372-MHT ) [WO] |
| KIM THOMAS, *et al.*, | ) ) |
| Defendants. | ) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I. INTRODUCTION**

This case is before the court on a 42 U.S.C. § 1983 complaint filed by Plaintiff, a state inmate incarcerated at the Elmore Correctional Facility in Elmore, Alabama. Pending before the court is Plaintiff's request for a preliminary injunction. He seeks to enjoin Defendants from delaying and/or denying prompt and adequate medical care for his serious medical needs which Plaintiff maintains arose after being assaulted by correctional officers on March 14, 2016. As directed, Defendants filed a response to Plaintiff's request for issuance of a preliminary injunction. Doc. #80, #85. Upon consideration of Plaintiff's motion for preliminary injunction, the court recommends the motion under Rule 65, *Federal Rules of Civil Procedure*, be denied.

**II. STANDARD OF REVIEW**

The decision to grant or deny a preliminary injunction "is within the sound discretion of the district court...." *Palmer v. Braun*, 287 F.3d 1325, 1329 (11th Cir. 2002). This court may grant a preliminary injunction only if Plaintiff demonstrates each of these prerequisites: (1) a substantial likelihood of success on the merits; (2) irreparable injury will occur absent issuance of the

injunction; (3) the threatened injury outweighs the potential damage the requested injunction may cause the non-moving parties; and (4) the injunction would not be adverse to the public interest. *Id.*; *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998); *Cate v. Oldham*, 707 F.2d 1176, 1185 (11th Cir. 1983); *Shatel Corp. v. Mao Ta Lumber and Yacht Corp.*, 697 F.2d 1352, 1354-55 (11th Cir. 1983). "In this Circuit, '[a] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the "burden of persuasion"" as to the four requisites." *McDonald's*, 147 F.3d at 1306; *All Care Nursing Service, Inc. v. Bethesda Mem'l Hosp. Inc.*, 887 F.2d 1535, 1537 (11th Cir. 1989) (a preliminary injunction is issued only when "drastic relief" is necessary); *Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 179 (5th Cir. 1975) (grant of preliminary injunction "is the exception rather than the rule," and movant must clearly carry the burden of persuasion). The moving party's failure to demonstrate a "substantial likelihood of success on the merits" may defeat the party's claim, regardless of the party's ability to establish any of the other elements. *Church v. City of Huntsville*, 30 F.3d 1332, 1342 (11th Cir. 1994); *see also Siegel v. Lepore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (noting that "the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper"). " 'The chief function of a preliminary injunction is to preserve the status quo until the merits of the controversy can be fully and fairly adjudicated.' " *Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1265 (11th Cir. 2001) (quoting *Northeastern Fla. Chapter of Associated Gen. Contractors of America v. City of Jacksonville,* 896 F.2d 1283, 1284 (11th Cir. 1990).

   Turning to the first prerequisite for issuance of preliminary injunctive relief, the court considers whether Plaintiff has proven a substantial likelihood of success on the merits. Having

2

thoroughly reviewed the request for a preliminary injunction, Defendants' responses, and in light of applicable federal law, the court concludes that Plaintiff fails to carry his burden.

### III. DISCUSSION

Initially, to the extent Plaintiff's request for a preliminary injunctive relief is directed at the correctional defendants, the court notes Plaintiff is no longer housed at the Draper Correctional Facility which is where he was incarcerated when he filed his motion. In a § 1983 action filed by a prisoner, a request for injunctive and declaratory relief becomes moot upon the transfer or release of that prisoner from the facility where his cause of action arose. *Spears v. Thigpen*, 846 F.2d 1327, 1328 (11th Cir. 1988) (quoting *Wahl v. McIver*, 773 F.2d 1169, 1173 (11th Cir. 1985) ("[t]his court has clearly stated the following: '[a]bsent class certification, an inmate's claim for injunctive and declaratory relief in a § 1983 action fails to present a case or controversy once the inmate has been transferred.' "). Moreover, "[e]quitable relief is a prospective remedy, intended to prevent future injuries." *Adler v. Duval County School Bd.*, 112 F.3d 1475, 1477 (11th Cir. 1997). For that reason, "[w]hen the threat of future harm dissipates, the plaintiff's claims for equitable relief become moot because the plaintiff no longer needs protection from future injury." *Id*. Accordingly, the court finds any request for a preliminary injunctive relief against the correctional defendants is moot. The court notes, however, the medical staff at the Staton Correctional Facility, besides providing medical services to inmates at that facility, also provides medical services to three other nearby facilities-the Elmore Correctional Facility, the Draper Correctional Facility, and the Frank Lee Youth Center. Doc. #85, DeJarnett Affidavit. Accordingly, Plaintiff's request for preliminary injunctive relief against the correctional medical defendants is not moot.

The medical defendants submitted affidavits from Nurse Charlene DeJarnett and Nurse Darryl Ellis with relevant excerpts from Plaintiff's medical records. The medical defendants argue Plaintiff has failed to show a substantial likelihood of success on his Eighth Amendment claim for inadequate medical care. A violation of the Eighth Amendment requires a showing of "deliberate indifference" to an inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Specifically, an inmate must show that: (1) the prison officials had subjective knowledge of a risk of serious harm; (2) the prison officials disregarded that risk; and (3) the conduct rises above mere negligence. *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999). To establish an objectively serious deprivation of medical care, a prisoner must establish: (1) an objectively serious medical need, and (2) that the response made to the need was poor enough to constitute an unnecessary and wanton infliction of pain, and not merely accidental inadequacy, negligence in diagnosis or treatment, or medical malpractice. *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000). A "serious medical need" is one that has been diagnosed by a physician as mandating treatment or one so obvious that even a lay person would easily recognize the necessity for a doctor's attention, and, in either case, must be one that if left unattended poses a substantial risk of serious harm. *Kelley v. Hicks*, 400 F.3d 1282, 1284 n. 3 (11th Cir. 2005).

Delay of treatment for a serious condition can rise to the level of deliberate indifference where delay would detrimentally exacerbate the medical problem, the delay does seriously exacerbate the medical problem, and the delay is medically unjustified. *Taylor*, 221 F.3d at 1259-60 (11th Cir. 2000) (*citing Hill v. Dekalb Reg'l Youth Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994), *overruled on other grounds by, Hope v. Pelzer*, 536 U.S. 730, 739 (2002)); *Lancaster v. Monroe County, Ala.*, 116 F.3d 1419, 1425 (11th Cir. 1997). Whether the delay was tolerable depends on

the nature of the medical need and the reason for the delay. *Farrow v. West*, 320 F.3d 1235, 1247 (11th Cir. 2003).

Assuming, *arguendo*, Plaintiff suffers from a serious medical condition, the medical defendants' evidence reflects he has received timely, appropriate, attentive, and adequate medical treatment for his medical issues and concerns. The medical defendants affirm that Plaintiff's requests for medical treatment have not been ignored or neglected nor have any medical providers interfered with Plaintiff's ability to receive necessary medical care or taken any action which caused Plaintiff to experience any unnecessary pain and/or suffering. Doc. #85, DeJarnett and Ellis Affidavits, Exh. A.

Plaintiff's medical records reflect that on March 16, 2016, two days after Plaintiff alleges correctional officers assaulted him, Nurse DeJarnett examined Plaintiff and completed a body chart. She found no visible signs of trauma on Plaintiff's skin nor did Plaintiff indicate he was experiencing any distress or an acute medical condition. In response to Plaintiff's May 16, 2016, sick call request wherein he complained of discomfort in his back and a loss of bladder control, Nurse DeJarnett examined him again on March 18, 2016. Plaintiff articulated some level of discomfort when the nurse palpated his back. Upon examination, however, Nurse DeJarnett found no indications of any acute condition from Plaintiff's alleged back discomfort, alleged loss of bladder control or any other medical condition, nor did she find signs indicating Plaintiff required or needed adult diapers. Doc. #85, DeJarnett, Exh. A.

Following Plaintiff's announcement that he was on a hunger strike, medical staff examined Plaintiff on March 22, 2016, and completed a body chart. The exam confirmed the absence of any wounds on Plaintiff's body. Medical personnel cautioned Plaintiff of the dangers to his health if he continued refusing to eat. Plaintiff signed an acknowledgement he understood the danger.

Medical staff continued to monitor and evaluate Plaintiff's health. On March 29, 2016, medical personnel completed a body chart for Plaintiff and noted his medical condition which reflected an absence of any injuries on his body. Plaintiff indicated his desire to continue the hunger strike. Medical staff examined Plaintiff the next day and again noted "no marks" on his body and confirmed that he "appear[ed] to be [in] good shape." Doc. #85, Ellis Affidavits, Exh. A.

In response to Plaintiff's assertion that on March 30, 2016, Nurse DeJarnett told him, "Traywick I've tried and tried to get you out to see me but DOC refused to bring you," Nurse DeJarnett adamantly denies making any such statement and affirms that neither on March 30, 2016, nor at any other time did she make this, or any such similar statement to Plaintiff. Further, Nurse DeJarnett never examined Plaintiff on March 30, 2016.[1] Doc. #85, DeJarnett Affidavit, Exh. A.

On April 4, 2016, Nurse Justin Oden examined Plaintiff for a follow-up examination regarding his complaints of back pain and loss of bladder control. Nurse Oden detected some tenderness in Plaintiff's lower lumbar region and provided Plaintiff with passes for a lower bunk, a double mattress and restrictions on exercising, lifting objects heavier than ten pounds, and other strenuous activities. Nurse Oden also ordered an x-ray of Plaintiff's lower back and a urinalysis in response to Plaintiff's complaints of bladder issues. The urinalysis indicated Plaintiff's urine contained oxalate crystals, which can form kidney stones, which were present only in a moderate level. The test reflected nothing concerning. Doc. #85, Ellis Affidavit, Exh. A.

---

[1] On March 30, 2016, Nurse Practitioner Justin Oden examined Plaintiff after he returned from an off-site audiologist visit. Plaintiff did not report distress of any kind to Nurse Oden. Doc. #85, Ellis Affidavit, Exh. A.

Plaintiff underwent an x-ray of his lower spine on April 6, 2016. The x-ray revealed foraminal narrowing (spinal stenosis) but no other abnormal indications, and the radiologist concluded Plaintiff's spine was largely "normal" and "intact. Doc. #85, Ellis Affidavit, Exh. A.

After reviewing the medical records submitted in response to Plaintiff's request for preliminary injunctive relief, the court cannot say Plaintiff has shown a substantial likelihood of success on the merits. Plaintiff's relevant medical records show medical personnel routinely examine him, evaluate his medical complaints and conditions, and respond in accordance with their evaluations to his various concerns and requests for medical care and treatment. As explained, the medical staff at Staton has continued to monitor Plaintiff and provide him with the medical care and treatment he requires. There is no evidence anyone on Staton's medical staff or anyone else has prevented or delayed Plaintiff from receiving necessary medical care or treatment nor any evidence that anyone on Staton's medical staff or anyone else denied Plaintiff necessary medical care or treatment. The medical defendants affirm that Plaintiff's medical records do not reflect he ever notified the medical staff he continues to experience any lingering physical symptoms because of the alleged altercation with correctional officers in March 2016.

The court finds no evidence in the record which reflects any defendant has been indifferent to Plaintiff's health conditions or concerns. To the extent there exists a difference in medical opinion on the provision of medical care, a difference in medical opinion will seldom rise to the level of a constitutional violation and based on the records filed does not do so here. *Hamm v. DeKalb*, 774 F.2d 1567, 1575 (11th Cir. 1985) (where a prisoner receives adequate medical care but desires to receive a different mode of treatment, the care provided does not amount to deliberate indifference); *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) (whether a defendant should have used additional or different diagnostic techniques or forms of treatment "is a classic example

7

of a matter for medical judgment and therefore not an appropriate basis for liability under the Eighth Amendment.").

Having found Plaintiff has failed to satisfy the first requirement for a preliminary injunction, the court need not consider the other factors.  *See Church*, 30 F.3d at 1342; *Siegel*, 234 F.3d at 1176.  Preliminary injunctive relief is not warranted.

### IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The motion for preliminary injunction (Doc. # 78) be DENIED.

2.  This case be referred to the undersigned for additional proceedings.

It is further

ORDERED that **on or before June 3, 2016**, the parties may file an objection to the Recommendation. Any objection filed must specifically identify the factual findings and legal conclusions in the Magistrate Judge's Recommendation to which the parties object.  Frivolous, conclusive or general objections will not be considered by the District Court. This Recommendation is not a final order and, therefore, it is not appealable.

Failure to file a written objection to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

Done, this 20th day of May 2016.

                                  /s/   Charles S. Coody
                              UNITED STATES MAGISTRATE JUDGE