IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| KENNETH SHAUN TRAYWICK, | ) | |
| #177 252, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.:  2:15-CV-372-MHT |
| | ) | [WO] |
| KIM THOMAS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**<u>RECOMMENDATION OF THE MAGISTRATE JUDGE</u>**

Plaintiff, Kenneth Traywick ["Traywick"], an inmate in the custody of the Alabama Department of Corrections, files the instant fee paid, *pro se* civil rights action under 42 U.S.C. § 1983. This action proceeds on Traywick's amended complaint (Doc. 3) for injunctive relief and damages challenging the conditions of confinement and adequacy of medical care and treatment afforded him during his incarceration at the Draper Correctional Facility.[1]  The named defendants include former Commissioner Kim Thomas, Warden Louis Boyd, Sergeant Jackie Pettway, Commissioner Jefferson Dunn, Steward Willy Jackson, Woodrow Myers, Jr., Dr. Crocker, Corizon Medical Services, LLC, and Nurse Nancy Barnette.

Defendants filed answers, special reports, and supporting evidentiary materials addressing Traywick's claims for relief. Docs. 28, 57, 58, 64. In these documents, Defendants deny they acted in violation of Traywick's constitutional rights. The medical defendants also assert the amended complaint is due to be dismissed because Traywick failed to exhaust properly an administrative remedy available to him through the prison system's medical care provider regarding the medical

---

[1] Traywick is currently housed at the Fountain Correctional Facility in Atmore, Alabama.

claims in this cause of action prior to filing this action. Docs. 57, 58, 58-2. The medical defendants base their exhaustion defense on Traywick's failure to submit any medical grievances or grievance appeals regarding the claims presented in this case. Docs. 58-2, 58-4 at 143–148. In addition, the medical defendants maintain, and the evidentiary materials, including Traywick's medical records, indicate he received medical treatment during the time relevant to the matters alleged in the complaint. Docs. 58-1, 58-3, 58-4.

Upon receipt of Defendants' special reports the court issued an order directing Traywick to file a response, including sworn affidavits and other evidentiary materials, and specifically cautioning Traywick that "the court may at any time thereafter and without notice to the parties (1) treat the special reports and any supporting evidentiary materials as a motion for summary judgment." Doc. 62 at 3–4; *see also* Doc. 71. In its order granting Traywick an opportunity to file a response to Defendants' reports, he was also advised to "specifically address the medical defendants' argument that he [] failed to exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act ("PLRA")." Doc. 62 at 1 (footnote omitted). The October 2 order further cautioned Traywick that unless "sufficient legal cause" is shown within ten days of entry of this order "why such action should not be undertaken, . . . the court may at any time [after expiration of the time for [his] . . . filing a response to this order] and without further notice to the parties (1) treat the special reports and any supporting evidentiary materials as [dispositive] motions . . . and (2) after considering any response as allowed by this order, rule on the [dispositive] motions in accordance with law." *Id.* at 3-4; Doc. 71.

Traywick responded to Defendants' special reports. Docs. 37, 45, 75, 76. The responses are not sworn to by Traywick for the truthfulness of the statements he makes and, thus, does not meet the requirements of FED. R. CIV. P. 56 (e)(1) (requiring that an affidavit "be made on

personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated . . . ").[2] This failure on Traywick's part means that the court cannot, and did not, consider these responses in opposition to Defendants' dispositive motions and they are not evidence that could be deemed to create a genuine issue of material fact. See FED.R.CIV.P. 56(e)(1); *Holloman v. Jacksonville Housing Authority*, 2007 WL 245555, *2 (11th Cir. Jan. 30, 2007) ("unsworn statements, even from *pro se* parties, should not be considered in determining the propriety of summary judgment"); *Pfeil v. Rogers*, 757 F.2d 850, 859 (7th Cir. 1986); *Dickinson v. Wainwright*, 626 F.2d 1184, 1185 (5th Cir.1980).[3] To the extent affidavits or evidentiary submissions filed, or attached to Traywick's unsworn opposition, do meet the requirements of Rule 56(e)(1) (*see* Doc. 37-1 at 7–9, 15–18, 25–28; Doc. 43; Doc. 45 at 33–35; Doc. 76-1; Doc. 76-2 at 2), the court has considered them but finds they do not demonstrate there is any genuine issue of material fact. *See* Doc. 62 at 3; Doc. 71.

The court now treats the correctional defendants' special reports (Doc. 28, 64) as motions for summary judgment. The court will treat the medical defendants' special report (Doc. 58) as a motion to dismiss regarding the exhaustion defense. *Bryant v. Rich*, 530 F.3d 1368, 1374-75 (11th Cir. 2008) (internal quotations omitted) ("[A]n exhaustion defense . . . is not ordinarily the proper subject for a summary judgment [motion]; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment."); *see also Trias v. Fla. Dept. of Corrs.*, 587 F. App'x 531, 534 (11th Cir. 2014) (holding that the district court properly construed

---

[2] Doc. # 76-1 is an affidavit sworn under penalty of perjury; however, this affidavit is in response to the medical issues and effectively demonstrates that Traywick did not properly exhaust his medical claims.

[3] The Eleventh Circuit in *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc ), adopted as binding precedent of the decisions of the former Fifth Circuit rendered prior to October 1, 1981.

a defendant's "motion for summary judgment as a motion to dismiss for failure to exhaust administrative remedies").

# I.  STANDARD OF REVIEW

**A.      Exhaustion**

In addressing the requirements of 42 U.S.C. § 1997e exhaustion, the Eleventh Circuit has

> recognized that [t]he plain language of th[is] statute makes exhaustion a precondition to filing an action in federal court.  This means that until such administrative remedies as are available are exhausted, a prisoner is precluded from filing suit in federal court.

*Leal v. Ga. Dept. of Corrs*., 254 F.3d 1276, 1279 (11th Cir. 2001) (citations and internal quotations omitted). Furthermore, "the question of exhaustion under the PLRA [is] a 'threshold matter' that [federal courts must] address before considering the merits of the case," and that cannot be waived. *Myles v. Miami-Dade Cnty. Corr. & Rehab. Dept*., 476 F. App'x 364, 366 (11th Cir. 2012) (quoting *Chandler v. Crosby*, 379 F.3d 1278, 1286 (11th Cir. 2004)).

> When deciding whether a prisoner has exhausted his remedies, the court should first consider the plaintiff's and the defendants' versions of the facts, and if they conflict, take the plaintiff's version of the facts as true. If in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed.  If the complaint is not subject to dismissal at this step, then the court should make specific findings in order to resolve the disputed factual issues related to exhaustion.

*Myles*, 476 F. App'x at 366 (citations and internal quotations omitted).  Consequently, a district court "may resolve disputed factual issues where necessary to the disposition of a motion to dismiss for failure to exhaust [without a hearing].  The judge properly may consider facts outside of the pleadings to resolve a factual dispute as to exhaustion where doing so does not decide the merits, and the parties have a sufficient opportunity to develop the record." *Trias*, 587 F. App'x at

535. Based on the foregoing, the Eleventh Circuit has rejected an inmate-plaintiff's argument that "disputed facts as to exhaustion should be decided" only after a trial either before a jury or judge. *Id*. at 534.

**B.     Summary Judgment**

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc*., 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").   The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing the non-moving party has failed to present evidence to support some element on which it bears the ultimate burden of proof. *Id*. at 322−324.

Defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact. Thus, the burden shifts to Traywick to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to the case exists. *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record including affidavits, relevant documents or other materials], the court may . . . grant summary judgment if the motion

and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . ."); *see also Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014) (holding that the court should consider facts pled in a plaintiff's sworn complaint when considering summary judgment). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable factfinder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263. The evidence must be admissible at trial, and if the nonmoving party's evidence "is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249–50 (1986); Fed. R. Civ. P. 56(e). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice . . . ." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252). Only disputes involving material facts are relevant, materiality is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248.

To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255; *see also United States v. Stein*, 881 F3d 853 (11th Cir. 2018) (holding that a plaintiff's self-serving and uncorroborated, but not conclusory, statements in an affidavit or deposition may create an issue of material fact which precludes summary judgment); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) (citations omitted) ("To be sure, [plaintiff's] sworn statements are self-serving, but that alone does not permit us to disregard them at the summary judgment stage. . . . 'Courts routinely

and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving.'"). "Conclusory, uncorroborated allegations by a plaintiff in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well-supported summary judgment motion." *Solliday v. Fed. Officers*, 413 Fed. App'x 206, 207 (11th Cir. 2011) (*citing Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990)); *see also Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (holding that conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the court, a *pro se* litigant does not escape the burden of sufficiently establishing a genuine dispute of material fact. *See Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, a plaintiff's *pro se* status alone does not mandate that this court disregard elementary principles of production and proof in a civil case. Here, Traywick fails to demonstrate a requisite genuine dispute of material fact so as to preclude summary judgment on his claims against Defendants. *See Matsushita*, 475 U.S. at 587.

## II. DISCUSSION

### A. The Medical Defendants

Traywick challenges the adequacy of medical care received at the Draper Correctional Facility "throughout 2014 and 2015."[4] Doc. 3. In response to the complaint, the medical defendants deny they provided Traywick with constitutionally inadequate medical care and argue this case is subject to dismissal because he failed to exhaust properly the administrative remedy provided by the institutional medical care provider prior to filing this complaint as required by the Prison

---

[4] Traywick arrived at Draper from Holman on or about July 22-23, 2014. Doc. 28-4 at 1.

Litigation Reform Act, 42 U.S.C. § 1997e(a). Docs. 57, 58, 58-2.  As explained, federal law directs this court to treat the medical defendants' response as a motion to dismiss for failure to exhaust an administrative remedy and allows the court to look beyond the pleadings to relevant evidentiary materials in deciding the issue of proper exhaustion.  *Bryant*, 530 F.3d at 1375.

The PLRA compels exhaustion of available administrative remedies before a prisoner can seek relief in federal court on a § 1983 complaint.  Specifically, 42 U.S.C. § 1997e(a) states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  "Congress has provided in § 1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative remedies." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).   Exhaustion of all available administrative remedies is a precondition to litigation and a federal court cannot waive the exhaustion requirement. *Booth*, 532 U.S. at 741; *Alexander v. Hawk*, 159 F.3d 1321, 1325 (11th Cir. 1998); *Woodford v. Ngo*, 548 U.S. 81 (2006). Moreover, "the PLRA exhaustion requirement requires proper exhaustion," which

> demands compliance with an agency's deadlines and other critical procedural rules [as a precondition to filing suit in federal court] because no adjudicative system can function effectively without imposing some orderly structure on the courts of its proceedings. . . . Construing § 1997e(a) to require proper exhaustion . . . fits with the general scheme of the PLRA, whereas [a contrary] interpretation would turn that provision into a largely useless appendage.

*Woodford*, 548 U.S. at 90–93.  The Supreme Court reasoned that because proper exhaustion of administrative remedies is necessary an inmate cannot satisfy the PLRA's "exhaustion requirement . . . by filing an untimely or otherwise procedurally defective administrative grievance or appeal[,]" or by effectively bypassing the administrative process simply by waiting until the grievance procedure is no longer available to him." *Id*. at 83–84; *Bryant*, 530 F.3d at 1378 (holding that prisoners must "properly take each step within the administrative process" to exhaust administrative remedies in accordance with the PLRA); *Johnson v. Meadows*, 418 F.3d 1152, 1157 (11th Cir. 2005) (holding that an inmate who files an untimely grievance or simply spurns the administrative process until it is no longer available fails to satisfy the exhaustion requirement of the PLRA); *Higginbottom v. Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000) (holding that inmate's belief that administrative procedures are futile or needless does not excuse the exhaustion requirement). "The only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint." *Smith v. Terry*, 491 F. App'x 81, 83 (11th Cir. 2012).

The record is undisputed that the health care provider for the Alabama Department of Corrections provides a grievance procedure for inmate complaints related to the provision of medical treatment. Doc. 58-2.  The medical defendants submitted evidence which reflects that when inmates are processed into the custody of the Alabama Department of Corrections they are notified about the processes and procedures for obtaining medical care and prescribed medication. *Id.* Inmates are also provided information regarding the availability of the medical grievance procedure whereby they may voice complaints regarding any medical treatment sought or received during their incarceration. *Id.* Traywick signed several Access to Care forms acknowledging his understanding of the process and procedures for accessing healthcare as well as the grievance

process within the ADOC system including Draper. Doc. 58-4 at 3, 4, 7. In support of their motion to dismiss for failure to exhaust administrative remedies, the medical defendants attach the affidavit of Darryl Ellis ["Ellis"], the Director of Nursing ["DON"] at the Staton Correctional Facility.[5] Ellis affirms the Staton medical staff receives inmate requests or inmate grievances from prisoners at Draper on a daily basis. Doc. 58-2. Ellis affirms that inmates may voice complaints regarding any medical treatment sought or received during their incarceration. *Id.* The grievance process is initiated when an inmate submits a medical grievance form to the Health Services Administrator ["HSA"] through the institutional mail system. *Id.* The HSA reviews and answers the grievance within ten (10) days of receipt of the medical grievance. *Id.* The written response to a medical grievance is included on the bottom portion of the same form containing an inmate's medical grievance. *Id.* The inmate grievance form provides information about how an inmate may appeal the response he receives to his initial inmate grievance. Specifically, below the portion of the form designated for the "Response," the following notation appears:

> IF YOU WISH TO APPEAL A GRIEVANCE RESPONSE YOU MAY FILE A <u>GRIEVANCE APPEAL</u>. RETURN THE COMPLETED FORM TO THE ATTENTION OF THE HEALTH SERVICE ADMINISTRATOR. YOU MAY PLACE THE FORM IN THE SICK CALL REQUEST BOX OR GIVE IT TO THE SEGREGATION SICK CALL NURSE ON ROUNDS.

Doc. 58-2 at 3 (emphasis in original); *see also* Doc. 58-4 at 143–148.

As stated in the medical grievance forms, the second step of the grievance process involves the submission of a formal medical grievance appeal. Doc. 58-2. An inmate who submits a medical grievance appeal may be brought in for one-on-one communication with the medical staff, HSA

---

[5] The medical staff at Staton provides medical services to inmates incarcerated at Staton as well as the Draper Correctional Facility, the Elmore Correctional Facility, and the Frank Lee Youth Center which are all in close proximity to Staton. Doc. 58-2.

or the DON. *Id.* A written response to a formal medical grievance appeal is provided within approximately ten (10) days of receipt. *Id.*

Ellis states medical grievance and medical grievance appeal forms are available from the Health Care Unit and the correctional shift commander office at Draper. Doc. 58-2. Inmates are instructed to place completed medical grievance and medical grievance appeal forms in the sick call boxes located by the pill call room. *Id.* The HSA reviews the grievances daily and, as explained, provides a written response to grievances and grievance appeals within approximately ten days at the bottom of the form and returns a copy of the completed form to the inmate. *Id.* The medical defendants state Traywick failed to exhaust the available grievance procedure regarding the medical issues raised in his complaint. *Id.* Specifically, the medical defendants maintain Traywick submitted six medical grievances but filed no medical grievance appeals of any kind while at Draper. *Id.*; Doc. 58-4 at 143–148.

The record establishes that an administrative remedy procedure for inmate medical complaints is available to all inmates in ADOC custody, including Traywick, during his confinement at an ADOC institution, and specifically at Draper, during the relevant time period. Traywick does not challenge the availability of a grievance procedure at the institution. Defendants maintain Traywick's inmate medical file reflects he submitted several medical grievance forms but no appeal of any grievance regarding the allegations of inadequate medical care made the subject of his amended complaint.

Regarding his failure to file a grievance in accordance with the grievance procedure, Traywick submits an affidavit in which he contends that, contrary to the medical defendants' assertion he filed no grievance appeals, he maintains he "resubmitted" his original grievances as medical grievance appeals by resubmitting his original grievance with the addition of a mark in

the box marked "Medical Grievance Appeal." Doc. 76-1. Attached to Traywick's affidavit are copies of the six grievances filed by him with the notable addition of an "X" placed in the box beside the words "Medical Grievance Appeal." *See* Doc. 76-2 at 3, 4, 6–9. Traywick claims no response was given or received regarding his "resubmission" of his initial medical grievances. Doc. 76-1.  The court considers Traywick as arguing that prison officials "thwart[ed] [him] from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake,* ___ U.S. ___, 136 S.Ct. 1850, 1860 (2016).[6]

Although Traywick's and the medical defendants' allegations conflict, Traywick's allegation he was impeded in his effort to exhaust administrative remedies is assumed to be true for purposes of this Recommendation. *Turner,* 541 F.3d at 1082. If, even under a plaintiff's version of the facts, the plaintiff has not exhausted, the complaint must be dismissed. *Id*. However, if the parties' conflicting facts leave a dispute as to whether a plaintiff has exhausted, the court need not accept all of the plaintiff's facts as true. *Id*. Rather, "the court then proceeds to make specific findings in order to resolve the disputed factual issues[.]" *Id*. "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." *Id*. at 1083. The court may consider materials outside of the pleadings and resolve factual disputes regarding exhaustion in conjunction with Rule 12(b)(6) motion to dismiss if the factual disputes do not decide the merits of the case. *See Bryant*, 530 F.3d at 1376–77.

---

[6]In *Ross,* the Supreme Court rejected a "special circumstances" exception to exhaustion but reiterated that a prisoner need only exhaust those remedies which were available to him. 136 S.Ct. at 1858 ("An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones."). The court further found that "[g]iven prisons' own incentives to maintain functioning remedial processes, we expect that these circumstances will not often arise." *Id.* at 1859.

The court turns to the second *Turner* step where the medical defendants bear the burden of establishing a lack of exhaustion. To support their motion to dismiss, the medical defendants' have submitted evidence which establishes that the ADOC provides a procedure for inmates at Draper who wish to submit a grievance regarding their provision of medical care at the facility. Medical grievance forms are available to inmates at Draper, inmate grievances are reviewed and answered by the HSA, and if the inmate is dissatisfied with the response he receives, the inmate proceeds to the second step of the grievance process by seeking review of the initial response through submission of a formal medical grievance appeal at which time an inmate may be brought in for a one-on-one communication with medical staff, the HSA, or the DON. Regardless of whether a one-on-one communication occurs, a written response to a formal medical grievance appeal is provided within approximately ten days of receiving the grievance appeal. Inmates are instructed to place medical grievance forms and medical grievance appeal forms in the sick call box located by the pill call room. Doc. 58-2.

Traywick's evidence has not successfully rebutted this showing that an administrative remedy process was available at Draper during the time of his incarceration and that he failed to properly exhaust the available administrative remedy. Traywick offers only his own self-serving evidence that he received responses to these initial grievances but no responses at all to his medical grievance appeals. That the medical defendants' evidence reflects medical staff were able to produce records of Traywick's initial medical grievances, including a response by medical staff, contradicts and makes suspect his contention they failed to respond to any appeal of those grievances. Moreover, Traywick's claim that he exhausted the medical provider's administrative remedy because he followed the procedure is refuted by the record. The undisputed evidence before the court regarding the grievance procedure provided by the institution's medical provider

does not contemplate "resubmission" of an original grievance with only the addition of a check in the box marked "medical grievance appeal." Rather, the administrative process requires a grievance appeal to be submitted on a separate grievance appeal form wherein the inmate describes in writing his request to appeal from the review of the initial medical grievance.

Here,  Traywick's submission of copies of his initial inmate grievances which, in addition to containing a check mark in the box designated for a "Medical Grievance," also show a mark in the box designated for "Medical Grievance Appeal," reflects an obvious attempt to establish exhaustion, but more importantly, fails to overcome the medical defendants' evidence showing that a grievance system is available at Draper, and that he failed to exhaust properly within the appropriate channels  or  in accordance with the appropriate procedures the administrative remedy available to him. An institution's requirements define what is considered exhaustion. *Bock,* 549 U.S. at 218. *See also Woodford*, 548 U.S. 84-851 (to exhaust administrative remedies, an inmate must comply with all steps prescribed by the jail's grievance system); *Bryant*, 530 F.3d at 1378 (quoting *Johnson*, 418 F.3d at 1157 ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'"); *Twitty v. McCoskey,* 226 Fed. Appx. 594, 596 (7th Cir. 2007) (inmate failed to avail himself of the administrative remedies which existed to redress his claims where he made his complaints "outside the channels of the [jail's formal] grievance procedure."); *Brewington v. Daniels*, 2012 WL 6005780 *4-5  (M.D. Ala. 2012) (inmate's conclusory assertion he complied with grievance procedures but  medical staff failed to timely respond to his initial medical grievance insufficient to overcome Defendants' evidence showing that a grievance system was available for Plaintiff's claims); *Maclary v. Carroll*, 142 Fed. Appx. 618, 620 (3rd Cir. 2005) (inmate's unsupported conclusory allegations he filed grievances which went unanswered and unprocessed were

insufficient to overcome defendants' evidence he failed to exhaust available administrate remedies).

The court has carefully reviewed the pleadings, documents, and records and concludes a grievance procedure was available to Traywick at Draper, and he failed to exhaust properly the available administrative remedies regarding the claims in this action or failed to demonstrate he was denied access to those administrative remedy procedures.[7] *See Bock*, 549 U.S. at 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."). Accordingly, the medical defendants' motion to dismiss for failure to exhaust is due to be granted without prejudice. *See Ngo*, 548 U.S. at 87-94; *Bryant*, 530 F.3d at 1374-1375 (dismissal for failure to exhaust an administrative remedy when the remedy remains available is not an adjudication of the merits and is without prejudice); *Woodford*, 548 U.S. at 87-94.

The court will not discuss Traywick's claims against the correctional defendants.

---

[7]As noted elsewhere, Traywick's affidavit, doc. # 76-1, states that he did file a grievance about alleged lack of treatment for "scabies." However, the grievance form, doc. # 76-2 at 6, shows that Traywick complained about other inmates, not treatment of him. That is not a proper appeal.

### B.     The Correctional Defendants[8]

### 1. Injunctive Relief

Traywick's request for injunctive relief is due to be dismissed as moot. Traywick is no longer incarcerated at Draper. The transfer or release of a prisoner renders moot any claims for injunctive or declaratory relief.  *See County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *see also Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (past exposure to even illegal conduct does not in and of itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing present injury or real and immediate threat of repeated injury). Because Traywick is no longer incarcerated at Draper, his request for equitable relief is moot.

### 2. Absolute Immunity

To the extent the alleged constitutional violations Traywick lodges against the correctional defendants are made against them in their official capacities, they are entitled to absolute immunity from monetary damages.  Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).   "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School 0& Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59],

---

[8] To the extent Traywick raises additional allegations of constitutional violations through any properly supported opposition which were not affirmatively pled in his amended complaint, under settled law, a plaintiff may not "amend" his complaint through his opposition by raising a new claim(s). *See Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006) (rejecting a new basis for a pending claim raised during summary judgment proceedings); *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314 (11th Cir. 2004) (finding the Rules of Civil Procedure do "not afford plaintiffs with the opportunity to raise new claims at the summary judgment stage."). The court, therefore, addresses Traywick's conditions claims against the correctional defendants as alleged in the amended complaint, and considers the facts only to the extent that they support those claims. *See Chavis v. Clayton Cnty. Sch. Dist.*, 300 F.3d 1288, 1291 n. 4 (11th Cir. 2002) (refusing to address a new theory raised during summary judgment because the plaintiff had not amended the complaint).

116 S. Ct. 1114, 1125 (1996). Alabama has not waived its Eleventh Amendment immunity, see *Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear that the correctional defendants are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacity. *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994).

### 3. Speculative Claims

Traywick's claims are based on a fear of conditions, actions, or maladies which could have, but did not, occur during his incarceration at Draper, do not entitle him to relief. Mere speculative allegations that conditions could subsequently result in a constitutional violation fail to implicate a constitutionally protected interest. *Conner v. Sticher*, 801 F.2d 1266, 1268 (11th Cir. 1986) (plaintiff's subjective belief harm may occur provides no basis for relief); *Cotterall*, 755 F.2d at 780 (jurisdiction cannot be premised upon mere speculation); *Carter v. Heard*, 593 F.2d 10 (5th Cir. 1979) (relief is not warranted when "the injury which [plaintiff's] pleadings contemplate is fancied, not real; prospective, not actual; and imagined, not threatened."). Thus, claims based on mere potential and/or future possibilities are subject to dismissal as these claims are purely speculative and without constitutional implication.

### 4. *Respondeat Superior* - Defendants Dunn and Thomas

Traywick alleges former Commissioner Thomas and Commissioner Dunn failed to intervene, stop, or prevent the conduct about which he complains and failed to protect him from

the alleged unconstitutional conduct of Defendants Boyd, Pettway, and Jackson. However, there is no evidence that former Commissioner Thomas or Commissioner Dunn, who was appointed Commissioner of the Alabama Department of Corrections ["ADOC"] on April 1, 2015, acted or failed to act in a deliberately indifferent manner regarding Traywick's allegations. Before becoming Commissioner, Dunn had no contact with the ADOC and states he does not know Traywick nor has he had any contact with him. Both Dunn and Thomas deny any personal knowledge or involvement with the claims made the basis of the amended complaint and maintain the Commissioner of the ADOC does not control the daily operations of the ADOC facilities.[9] Doc. 28-1, Doc. 64-1.

Traywick has not produced any evidence to show Defendants Thomas or Dunn were directly responsible for or personally participated in establishing the conditions about which he complains. In such a situation, the law in this circuit is well settled. "[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks and citation omitted); *Keith v. DeKalb Cty., Ga.*, 749 F.3d 1034, 1047 (11th Cir. 2014). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Marsh v. Butler Co. Ala.*, 268 F.3d 1014, 1035 (11th Cir. 2001), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) (A supervisory official "can have no *respondeat superior* liability for a section 1983 claim."); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (concluding supervisory officials

---

[9] Traywick's submission of an affidavit from one Ms. Jones stating she contacted the *office* of the Commissioner regarding "complaints" (*see* Doc. 37-1 at 24; Doc. 72-2 at 2) fails to refute Defendants Thomas's and Dunn's testimony that they had no knowledge or involvement regarding the claims presented in this action.

are not liable on the basis of *respondeat superior* or vicarious liability); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999), *citing Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) (42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of their subordinates under either a theory of *respondeat superior* or vicarious liability.). "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. Thus, liability for actions of correctional officials at Draper could attach to Thomas or Dunn only if they "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [their] actions ... and the alleged constitutional deprivation." *Cottone*, 326 F.3d at 1360.

Here, Traywick, presents no evidence which would create a genuine dispute of material fact regarding the claims lodged against Thomas and Dunn. It is undisputed these defendants did not personally participate in or have any involvement, direct or otherwise, with the claims made the basis of the amended complaint. In light of the foregoing, Thomas and Dunn can be held liable for actions of correctional officials at Draper only if their actions bear a causal relationship to the purported violations of Traywick's constitutional rights. To establish the requisite causal connection and avoid entry of summary judgment in favor of Thomas and Dunn, Traywick must present sufficient evidence which would be admissible at trial of either "a history of widespread abuse [that] put[ ] [the defendant] on notice of the need to correct the alleged deprivation, and [he] fail[ed] to do so ..." or "a ... custom or policy [that] result[ed] in deliberate indifference to constitutional rights, or ... facts [that] support an inference that [Thomas or Dunn] directed the [facility's staff] to act unlawfully, or knew that [the staff] would act unlawfully and failed to stop them from doing so." *Cottone*, 326 F.3d at 1360 (internal punctuation and citations omitted). A

thorough review of the pleadings and evidentiary materials submitted in this case demonstrates Traywick has not met this burden.

The record before the court contains no evidence to support an inference that Thomas or Dunn directed correctional officials to act unlawfully or knew that they would act unlawfully and failed to stop such action. In addition, Traywick presents no evidence of obvious, flagrant or rampant abuse of continuing duration in the face of which Thomas or Dunn failed to take corrective action. Finally, no evidence is presented that the challenged actions/conditions occurred pursuant to a policy enacted by Thomas or Dunn. While Traywick alleges the correctional defendants implemented a custom or policy which failed to carry out or ignored his medical profiles regarding a serious medical disability by forcing him to do a job beyond his physical capabilities, he fails to specifically identify which policy or custom, if any, caused his alleged injuries. A blanket allegation of a policy or custom, without further specification, elaboration, or substantive support, is insufficient. Thus, the requisite causal connection does not exist between the actions of correctional officials at Draper and Defendants Thomas and Dunn and liability under the custom or policy standard is not warranted. Based on the foregoing, summary judgment is due to be granted in favor of Defendants Thomas and Dunn.

### 5. Defendants Boyd, Pettway, and Jackson - Qualified Immunity

Defendants Boyd, Pettway, and Jackson (hereinafter "the correctional defendants") raise qualified immunity as a bar to the Traywick's Eighth Amendment deliberate indifference claims. Doc. 28 at 5–10. Qualified immunity offers complete protection from civil damages for government officials sued in their individual capacities if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818

(1982)). Qualified immunity is not merely a defense against liability but rather immunity from suit, and the Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009) (quotation marks and citations omitted). To receive qualified immunity, the public official must first prove he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). There is no dispute the correctional defendants were acting within the course and scope of their discretionary authority when the incidents occurred. Traywick must, therefore, allege facts that, when read in a light most favorable to him, show the correctional defendants are not entitled to qualified immunity. *Cottone*, 326 F.3d at 1358.

To satisfy his burden, a plaintiff must show two things: (1) that a defendant committed a constitutional violation and (2) that the constitutional right a defendant violated was "clearly established." *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004). "To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right. In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, ___ U.S. ___, 132 S. Ct. 2088, 2093 (2012) (quotation marks and citations omitted). "Clearly established law" means (1) "a materially similar case has already been decided"; (2) "a broader, clearly established principle that should control the novel facts of the situation"; or (3) "the conduct involved in the case may so obviously violate the constitution that prior case law is unnecessary." *Gaines v. Wardynski*, 871 F.3d 1203, 1208–09 (11th Cir. 2017) (quotation marks and citations omitted). The controlling authority is from "the United States Supreme Court, the Eleventh Circuit, or the highest court in the relevant state." See *Id*. at 1209. "Qualified immunity gives government officials

breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (quotation marks and citations omitted). The Eleventh Circuit "has stated many times that if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Gaines*, 871 F.3d at 1210.  "Exact factual identity with the previously decided case is not required, but the unlawfulness of the conduct must be apparent from pre-existing law." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011). If a plaintiff cannot establish both elements to satisfy his burden, the defendants are entitled to qualified immunity, and the court may analyze the elements "in whatever order is deemed most appropriate for the case." *Rehberg v. Paulk*, 611 F.3d 828, 839 (11th Cir. 2010) (*citing Pearson*, 555 U.S. at 241–42).

### 6. Deliberate Indifference

Traywick must present evidence the correctional defendants acted with deliberate indifference in violation of the Eighth Amendment regarding the challenged conditions at Draper.[10] *See Hope*, 536 U.S. at 736; *see also* Doc. 3 at 6 ("[The correctional] Defendants' … acts and omissions are in violation of the . . . 8th … Amendment."); Doc. 3 at 5 (same). For a plaintiff to demonstrate an Eighth Amendment deliberate indifference violation regarding conditions of confinement, the Supreme Court has held that

> a prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, sufficiently serious …; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities[.] For a claim … based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.

---

[10] Traywick challenges the conduct of the defendants under the Eighth and Fourteenth Amendments. The court notes the Eighth Amendment applies to the States through the Due Process Clause of the Fourteenth Amendment, *Robinson v. California*, 370 U.S. 660, 666 (1962), which prohibits the infliction of "cruel and unusual punishments" on those convicted of crimes.

> The second requirement follows from the principle that *only the unnecessary and wanton infliction of pain implicates the Eighth Amendment* …. To violate the Cruel and Unusual Punishments Clause, a prison official must have a sufficiently culpable state of mind. In prison-conditions cases that state of mind is one of deliberate indifference to inmate health or safety[.]

*Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal marks, citations, and footnote omitted)

(emphasis supplied).

A plaintiff must satisfy both an objective and a subjective test. *Id*. The objective component requires an inmate to show first that "an objectively substantial risk of serious harm ... exist[ed]. Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh*, 268 F.3d at 1028-1029, Regarding the subjective component,

> the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference …. The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.' ... [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Farmer*, 511 U.S. at 837-38; *see also Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) (*citing Farmer*, 511 U.S. at 838) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same). The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety . . . It is obduracy and wantonness, not inadvertence or error in good faith, which characterize the conduct prohibited by the Cruel and Unusual Punishments Clause[.]" *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (emphasis added). To prove deliberate indifference, a prisoner must show the defendant had subjective knowledge of a risk of serious harm and disregarded that risk through conduct constituting more than gross negligence. *Goodman v. Kimbrough,* 718 F.3d 1325, 1332

(11th Cir. 2013). "Merely negligent failure to protect an inmate ... does not justify liability under section 1983[.]" *Brown*, 894 F.2d at 1537.

### a. Medical Claim

In Ground One of his amended complaint Traywick challenges the provision of his healthcare at Draper. Traywick's allegation makes reference to "Defendants" in the aggregate, thus, there are no specific allegations made against any specific correctional defendant regarding Traywick's medical care and treatment. More importantly, however, there is no indication any correctional defendant was personally involved in the provision of his medical care. Additionally, the correctional defendants' testimony reflects that in their capacity as correctional officials they are not medical professionals, the prison medical contract provider is responsible for the medical treatment of inmates in ADOC custody, and they have never denied or interfered with Traywick's ability to access medical care and treatment from the institutional medical provider. Doc. 28-2–28-7.

To the extent Traywick seeks to hold the correctional defendants liable for his medical care based on their supervisory positions, as explained already, supervisory personnel cannot be liable under § 1983 for a constitutional violation of one of their subordinates via a theory of *respondeat superior* or on the basis of vicarious liability. *Iqbal*, 556 U.S. at 676 (doctrine of *respondeat superior* is inapplicable to § 1983 actions); *Belcher*, 30 F.3d at 1396; *Cottone*, 326 F.3d at 1360.

The *Iqbal* Court clarified that a government official sued in his/her individual capacity for alleged constitutionally tortious behavior cannot be held liable on a *respondeat superior* theory or on the basis of some general connection to allegedly responsible individuals or actions. *Id*. at 676-77 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior* . . . [A] plaintiff must plead that each

Government-official defendant, through the official's own actions, has violated the Constitution . . . [P]urpose rather than knowledge is required to impose [constitutional] liability on . . . an official charged with violations arising from his or her superintendent responsibilities"); *see also Greason v. Kemp*, 891 F.2d 829, 836 (11th Cir. 1990) (explaining that a supervisor "can be held liable under section 1983 when a reasonable person in the supervisor's position would have known that his conduct infringed the constitutional rights of the plaintiff, and his conduct was causally related to the constitutional violation committed by his subordinate") (citations and footnote omitted). Rather, the language of 42 U.S.C. § 1983 requires proof of an affirmative causal connection between the actions taken by a defendant and the alleged constitutional deprivation. *Swint v. City of Wadley, Ala.*, 51 F.3d 988, 999 (11th Cir. 1995).

Here, Traywick presents no facts showing purposeful personal involvement by the correctional defendants regarding the provision of his healthcare. Absent some allegation or evidence the correctional defendants knew of, sanctioned, participated in or were otherwise "affirmatively linked" to the actions about which Plaintiff complains regarding the provision of his health care, they may not be held liable. *See Iqbal*, 556 U.S. at 676. The correctional defendants are entitled to summary judgment on this claim.

### b. Conditions Claim

Traywick alleges the correctional defendants failed to provide him with "standard medical protocols" regarding infectious diseases, second hand smoke, and unsanitary conditions in his living area, *i.e.,* no bleach to clean bathrooms. Doc. 3 at 3. According to Traywick, he contracted scabies while at Draper because the correctional defendants deliberately exposed him to the infectious disease by not isolating him from inmates who had scabies and failed to isolate him after he became infected causing him unnecessary pain and suffering. *Id.* at 5–6. Traywick also contends

the correctional defendants failed to carry out prescribed medical treatment regarding his "serious disability"—lower back pain—by ignoring medical and/or special needs profiles and forcing him to engage in activities beyond his physical capabilities.  *Id.* at 3. Specifically, Traywick maintains the correctional defendants ignored his profiles for a double mattress, a bottom bunk, no heavy lifting, no prolonged standing or walking, and no bending, stooping, or leaning.  *Id.* at 6–7.

As explained, the court views the evidence in the light most favorable to Traywick regarding his allegations of unconstitutional conditions asserted against the correctional defendants and, for purposes of the instant motion for summary judgment, assumes, without deciding, that Traywick reported those conditions to the correctional defendants, and they were aware of the alleged conditions that form the basis of his amended complaint. The correctional defendants, however, are nevertheless entitled to qualified immunity on Traywick's claims because the evidence of record, viewed in his favor, shows that they did not wantonly disregard the conditions of which Traywick complained or act with a culpable state of mind. *See Whitley*, 475 U.S. at 319 (a prison official must wantonly disregard prison conditions for an Eighth Amendment violation to occur); *Pearson*, 555 U.S. at 232 (a defendant is entitled to qualified immunity if a plaintiff fails to demonstrate a constitutional violation.).

### i. Second-Hand Smoke

Traywick alleges the correctional defendants "have in the past, now, and in the future continuously failed to provide [him] standard medical protocol" as to second-hand smoke exposure. Doc. 3. The court considers Traywick to allege a claim that the correctional defendants failed to protect him from exposure to harmful levels of second-hand smoke (environmental tobacco smoke—"ETS").

"The Eighth Amendment governs 'the treatment a prisoner receives in prison and the conditions under which he is confined.' *Helling v. McKinney*, 509 U.S. 25, 31, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993)." *Kelley v. Hicks*, 400 F.3d 1282, 1284 (11th Cir.2005) (per curiam). As explained, correctional officials may be held liable under the Constitution for acting with "deliberate indifference" to an inmate's health or safety when the official knows that the inmate faces "a substantial risk of serious harm" and with such knowledge disregards that risk by failing to take reasonable measures to abate it. *Farmer*, 511 U.S. at 828. A constitutional violation occurs only when a plaintiff establishes the existence of "a substantial risk of serious harm, of which the official is subjectively aware, . . . and [that] the official does not respond[ ] reasonably to the risk." *Marsh*, 268 F.3d at 1028001) (en banc) (internal quotations and citation omitted). Thus, in order to survive summary judgment on this claim, Traywick is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the correctional defendants' deliberate indifference to that risk; and (3) causation." *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir.1995) (citation omitted)

> To be deliberately indifferent, the correctional defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a "'sufficiently culpable state of mind.'" " *Farmer*, 511 U.S. at 834–38, 114 S.Ct. at 1977–80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324–25, 115 L.Ed.2d 271 (1991).... [T]he prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists— and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir.2003); *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir.2004) (To establish that a prison official acted with deliberate indifference, "the prisoner must prove three facts: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence.").

[A] prisoner can state a cause of action under the Eighth Amendment for exposure to ETS by "alleging that [prison officials] have, with deliberate indifference, exposed him to levels of ETS that pose an unreasonable risk of serious damage to his future health." *Helling*, 509 U.S. at 35, 113 S.Ct. 2475. As for the objective factor, the prisoner must show that he himself is being exposed to unreasonably high levels of ETS. *Id.* Relevant facts will include whether the prisoner remains housed in the environment and whether the facility has enacted a formal smoking policy. *Id.* at 35–36, 113 S.Ct. 2475. The objective factor further considers "a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to ETS ... [and] also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Id.* at 36, 113 S.Ct. 2475 (emphasis in original). As for the subjective factor, the prisoner must show that prison authorities demonstrated a "deliberate indifference" to his plight. *Id.* The adoption of a smoking policy "will bear heavily on the inquiry into deliberate indifference." *Id.*

*Kelley*, 400 F.3d at 1284.

The evidence reflects that in March of 2014, while housed at Holman Correctional Facility, Traywick complained of sinus problems which caused headaches. Doc. 58-4 at 51–52. Medical personnel documented a history of seasonal allergies which Traywick maintained had lasted all winter. *Id.* One year later—in March of 2015—Traywick complained of a sinus infection stating he had had such infections for years as a result of smoke in the dorms. *Id.* at 107. On March 4, 2015, Draper medical staff examined Traywick for his request that his prescription for Zyrtec be renewed for his sinuses. Medical staff also noted that Traywick's history regarding his allergy medication started about a year ago, that he had history of seasonal allergies, and that he asserted an allergy to smoke. *Id.* at 108. Medical personnel saw Traywick on April 2, 2015, for his sick call request regarding worsening sinuses which sinus pills were not helping. *Id.* at 116. On exam, medical staff noted Traywick had nasal congestion with a past medical history of seasonal allergies. *Id.* at 117. Traywick was seen by medical personnel on April 24, 2015, for his complaint

of a sinus headache and on May 27, 2015, regarding his complaint of cluster headaches attributed to smoke in the dorm. *Id.* at 119, 124.

The correctional defendants testified Draper follows ADOC regulations which require all ADOC buildings and institutions to be smoke-free with no smoking or tobacco products which produce smoke allowed inside Draper. Smoke-free institutions have designated areas for smoking outside a building or institution. Institutions which are designated tobacco-free prohibit any tobacco products from entering the premises. Doc. 28-2 at 2, 3–5; Doc. 28-7. Traywick submits photographic evidence to support his opposition to the correctional defendants' assertion that Draper follows the smoke-free policy. Traywick submits photographs as evidence of his exposure to ETS due to officers and inmates at Draper smoking in B Dorm. Doc. 43.[11]

Here, Traywick fails to proffer evidence he was exposed to levels of ETS at Draper which posed an unreasonable risk to his health. The unrefuted medical records reflect medical personnel evaluated and treated Traywick for his allergy-related complaints consisting of nasal congestion, coughing, sinus pressure and/or headaches and which he told medical staff were aggravated from smoke. An inmate's "exposure to smoke must cause more than mere discomfort or inconvenience." *Talal v. White*, 403 F.3d 423, 426 (6th Cir. 2005). Here, there are no medical records which show Traywick suffered from a serious medical condition due to ETS nor has he shown he is competent to make medical diagnoses in this regard. The evidence of record fails to reflect Traywick's exposure to second-hand smoke caused him anything beyond discomfort, and thus, he fails to establish evidence of an objective serious medical need. *See Oliver v. Deen*, 77 F.3d 156, 159–61 (7th Cir. 1996) (finding an asthmatic inmate's assignment to cells with smoking inmates for 133

---

[11] Interestingly, Traywick's medical records reflect that during a medical consultation on September 25, 2012, the medical provider noted that, at the time, Traywick smoked a pack of cigarettes a day and had done so since age 13. Doc. 58-4 at 33.

days resulting in ETS exposure which aggravated the plaintiff's asthma and necessitated his increased use of an inhaler failed to satisfy the objective component.); *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999) ("the injuries of which [plaintiff] complains—breathing problems, chest pains, dizziness, sinus problems, headaches and a loss of energy—are, objectively speaking, relatively minor.").

To the extent Traywick alleges the correctional defendants subjected him to an unreasonable risk of serious damage to his future health by allowing his continued exposure to ETS, he is likewise entitled to no relief. Traywick's evidence reflects he was exposed to some level of ETS in B Dorm. Doc. 43. The court has considered Traywick's properly supported affidavits and other evidentiary submissions but finds no significantly probative evidence has been produced to show the level of ETS to which he was exposed was unreasonably high. Further, Traywick fails to show the correctional defendants knew he was allegedly exposed to ETS at Draper at any level, particularly an "unreasonably high level[ ] *Helling*, 509 U.S. at 35–36. Traywick has not offered any significantly probative evidence that correctional defendants were subjectively aware that his alleged exposure to ETS caused him to experience problems with health-related issues or that it exacerbated his allergies, that they had knowledge of specific facts from which an inference could be drawn that a substantial risk of harm existed to him, and that they actually drew this inference and thereafter ignored the attendant risk of harm.

Here, there is no evidence Traywick was prevented from seeing medical personnel for his allergy-related complaints, and his medical records show he was seen repeatedly by medical personnel at Draper. No doctor diagnosed Traywick with a serious health condition due to ETS nor did any physician order he be housed in a tobacco-free or smoke-free environment. The correctional defendants are not medical employees and, thus, may rely on the opinions of medical

experts regarding the provision of an inmate's medical care. Traywick has, therefore, failed to establish the requisite element of subjective awareness on the part of the correctional defendants. *Hicks*, 400 F.3d at 1285; *Carter*, 352 F.3d at 1350; *Scott*, 139 F.3d 940, 944 (D.C. Cir. 1998); *Hunt v. Reynolds*, 974 F.2d 734, 735 (6th Cir. 1992) (exposure to ETS must cause a "serious medical threat, not just discomfort ... mere exposure to ETS, without more, does not constitute a deprivation of a prisoner's Eighth Amendment rights."); *Shabazz v. Barrow*, 2006 WL 826712, *2 (M.D. Ga. 2006) ( finding that for a prisoner to show great risk from exposure to ETS, he must "do more than merely allege that tobacco smoke escaped into the air at the prison." Rather, he "must show that he himself is being exposed to unreasonably high levels of ETS.").

Finally, even if the correctional defendants failed to meticulously enforce the non-smoking policy at Draper, such evidence, without more, demonstrates at most only "imperfect enforcement" as opposed to deliberate indifference by any named defendant. *See Scott v. District of Columbia*, 139 F.3d 940, 944 (D.C. Cir. 1998) (holding that deliberate indifference requires something more than imperfect enforcement of a prison's smoking policy). An allegation the correctional defendants were negligent in maintaining a smoke-free facility is, alone, insufficient to establish deliberate indifference. *See Ray v. Foltz*, 370 F.3d 1079, 1083 (11th Cir. 2004) ("Deliberate indifference is not the same thing as negligence or carelessness."). Because Traywick fails to show that any correctional defendant, acting with deliberate indifference, exposed him to levels of second hand smoke which posed an unreasonable risk of harm to his present or future health, they are entitled to qualified immunity on this Eighth Amendment claim.

### ii. Sanitation

Traywick alleges the correctional defendants failed to provide safe and sanitary conditions at Draper by not providing appropriate cleaning supplies and allowing inmates with infectious

diseases to work in the kitchen and serve food to inmates. Doc. 3 at 3, 5. The correctional defendants deny that Traywick was subjected to unconstitutional conditions of confinement during his incarceration at Draper and deny the existence of unsanitary conditions during Traywick's incarceration at Draper. Doc. 28.

The correctional defendants testified that Draper has an officer designated as the Clean-up Supervisor to ensure institutional sanitation and good housekeeping measures are in place. The Clean-up Officer, among other duties, orders, receives, and distributes cleaning supplies and conducts roll call for cell cleaners and yard crew inmates after which he or she will issue cleaning supplies to the cell cleaners and yard tools to the yard crew inmates. The correctional defendants' evidence also includes copies of inspection reports conducted by the Alabama Department of Public Health ["ADPH"]. The ADPH inspected the Draper facility, including the kitchen, in May 2014 and May 2015. The institutional kitchen received scores of 96 and 91 respectively. Deficiencies noted on the reports about the overall condition of the Draper facility show that 2014 deficiencies were not reflected on the 2015 report, even if the noted deficiencies involved the same areas of the institution. Docs. 28-2, 28-7. These reports show that corrective action was taken concerning the deficiencies.

The Constitution proscribes those conditions of confinement which involve the wanton and unnecessary infliction of pain. *Rhodes v. Chapman*, 452 U.S. 337 (1981). There is no "static test" for determining which conditions violate the Constitution. Id. at 346. Whether a violation exists requires a determination of what conditions exist and whether objectively and subjectively the conditions offend the Constitution by amounting to seriously sufficient deprivations to which officials were deliberately indifferent. *See e.g., Farmer*, 511 U.S. 825. Only actions which deny

inmates "the minimal civilized measure of life's necessities," are grave enough to establish constitutional violations. *Rhodes*, 425 U.S. at 347; *see also Wilson v. Seiter*, 501 U.S. 294 (1991).

A prison official has a duty under the Eight Amendment to "provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)); *Helling*, 509 U.S. at 33.   In order to demonstrate the objective component of an Eighth Amendment violation with respect to conditions of confinement, a prisoner must prove that he was denied the "minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 832.  The challenged prison condition must be "extreme" and must pose "an unreasonable risk of serious damage to his future health." *Chandler v. Crosby*, 379 F.3d 1278, 1289-90 (11th Cir. 2004).   The subjective component requires a prisoner to prove that the prison official acted with "deliberate indifference" in disregarding that risk by showing that an official knew the inmate faced a "substantial risk of serious harm" and with such knowledge, disregarded that risk by failing to take reasonable measures to abate it. *Farmer*, 511 U.S.  at 828, 834, 837.

In this case, Traywick alleges he was subjected to unconstitutional conditions of confinement at Draper.  All of the conditions or problems identified by Traywick are unfortunately problems of prison life in general, a life which while not comfortable must be humane.  *Mathews v. Crosby*, 480 F.3d 1265, 1269 (11th Cir. 2007). Traywick's allegation that correctional officials ignored conditions at Draper that required attention or correction is contradicted by the evidence of record and, further, Traywick has not shown he had any serious deprivation regarding the conditions about which he complains. *See Farmer*, 511 U.S. at 834. Doc. 28-2 at 2, 6–12, Doc. 28-7.

Here, Traywick fails to establish the conditions about which he complains deprived him of the minimal civilized measure of life's necessities or caused him serious harm nor can the problems he describes be considered "abuses." Additionally, Traywick has failed to produce evidence which shows that the correctional defendants knew of an obvious risk of serious harm to him and disregarded that risk, *Farmer* 511 U.S. at 837, or that their actions resulted in the denial of the minimal civilized measure of life's necessities.   *Rhodes*, 452 U.S. at 347. Consequently, Defendants are entitled to qualified immunity on Traywick's claims challenging the conditions of confinement at Draper.

### iii. Scabies

Traywick complains the correctional defendants failed to adhere to "standard medical protocols" regarding infectious diseases and claims he contracted scabies at Draper because inmates, including himself, were not isolated after contracting the disease. Doc. 3 at 3, 5, 6. The correctional defendants state the contract medical provider is responsible for the medical treatment of inmates in the ADOC. Traywick's evidentiary materials or his medical records fail to reflect a medical directive requiring that either he be isolated for contracting scabies or that he be isolated from other inmates who had scabies. Traywick's medical records do reflect a history of chronic itching pre-dating his arrival at Draper which was diagnosed as chronic dermatitis in November of 2014. While Traywick received treatment at Draper for scabies in February and April of 2015, medical personnel determined from a review of his medical records and physical exams that his complaints of itching, for which he regularly received examination and treatment, were not due to scabies. Nonetheless, Traywick received treatment for scabies which resolved the issue.  Doc. 58-3 at 6–7, Doc. 54-4 at 16, 77–91, 94-104, 123.

"The Eighth Amendment's proscription of cruel and unusual punishments prohibits prison officials from exhibiting deliberate indifference to prisoners' serious medical needs." *Campbell v. Sikes*, 169 F.3d 1353, 1363 (11th Cir. 1999) (*citing Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To demonstrate a denial of medical care in violation of the Eighth Amendment, Traywick must prove both an objective and subjective component. The objective element requires Traywick to demonstrate the existence of an "objectively serious medical need." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir.2003). A serious medical need is " 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.' " *Id*. (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994)). "In either of these situations, the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." *Id*. (internal quotation marks and citation omitted). The subjective component of Traywick's medical claim requires that he demonstrate "deliberate indifference" to a serious medical need. *Farrow*, 320 F.3d at 1243. Deliberate indifference is shown by establishing that a defendant had actual knowledge or awareness of an obvious risk to a plaintiff's serious medical need and failed to take steps to abate that risk. It may be demonstrated by either actual intent or reckless disregard. *See Farmer*, 511 U.S. at 834. Reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and he must also draw the inference." *Id*. at 837; "[A]an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838. A review of Traywick's medical records

reflects that he received routine examination and evaluation for his complaints of itching and received treatment on two occasions for scabies while housed at Draper. Doc. 58-4.

Here, Traywick offers no evidence tending to show that the correctional defendants demonstrated deliberate indifference to his medical needs regarding his contraction of scabies by intentionally or deliberately delaying his receipt of necessary medical treatment or by interfering with his ability to access treatment. Although Traywick claims the correctional acted with deliberate indifference by failing to isolate him from other inmates who had contracted scabies, Traywick submits no evidence that such action was necessary or warranted. Traywick was not prevented from seeing medical personnel for his complaints related to both chronic itching and scabies, and he was seen and treated routinely by medical personnel while incarcerated at Draper. Here, the evidence before the court falls far short of demonstrating the degree of "deliberate indifference" to Traywick's medical needs required to demonstrate liability on the part of the correctional defendants *See Farmer*, 511 U.S. 825. Accordingly, the correctional defendants are entitled to summary judgment on this Eight Amendment claim.

### iv. Special Needs Profiles

Traywick alleges the correctional defendants failed to carry out and ignored special needs profiles due to his "serious medical disability" related to back pain. Traywick alleges the defendants failed to provide a bottom bunk or a double mattress, failed to abide by work profiles directing no heavy lifting, no prolonged standing or walking, no bending, stooping, or leaning, and required him to perform a job beyond his physical capabilities. Doc. 3 at 3, 6, 7. The unrefuted evidence of record reflects that in order for inmates in the custody of the ADOC to be exempt from prison operating procedures or protocols an authorized clinician must issue an inmate a signed profile allowing such exemption. Traywick had no documented special accommodations or

housing arrangements as of January 23, 2014. In April of 2014, a physician at Holman provided

Traywick a double mattress profile. However, on his transfer from Holman on July 21, 2014, the

medical staff at Holman did not note any "special housing required" on his completed

transfer/receiving screening form. On arrival at Draper, medical staff conducted an initial exam of

Traywick and documented that he did not require any special housing accommodation including

assignment to a bottom bunk. Doc. 28-5; Docs. 58-3, 58-4.

The correctional defendants' evidence reflects that responsibility for special needs profiles

are the province of the prison medical contractor. If an inmate is cleared for work duty, they may

be assigned to work in the institution including the kitchen. The correctional defendants' evidence

reflects Traywick received a kitchen duty assignment on arrival at Draper. Defendant Jackson

testified that:

> Upon entering the kitchen [Traywick] stated to me that he had back problems. I
> asked [Traywick] for his work stop or profile. He replied, "I don't have a work
> profile, I'm waiting to go to the HCU in order to obtain one. I told him I would give
> him a week off in order to obtain the profile. After two weeks had passed, inmate
> Traywick hadn't reported back with his profile. I sent for him. When he reported to
> the kitchen area, he still didn't have the profile. However, on August 11, 2014 he
> reported to the kitchen with a [work] profile stating he could not [lift more than ten
> to fifteen pounds and no excessive bending, kneeling, standing, squatting, or
> twisting for six weeks]. . .  Inmate Traywick was assigned to the dining area to wipe
> tables as the offenders got up after eating their meals. He was allowed to sit down
> while they were eating. At no time was inmate Traywick assigned to lift tables or
> barrels by me.

Doc. 28-7 at 1–3.

Defendant Pettway testified that he assigns inmates at Draper a job based on their ability.

He assigned Traywick to the kitchen because the inmate did not present him with a medical profile

limiting his ability to work any job but states he never instructed Traywick to pick up heavy barrels

or tables nor engage in bending, stooping, or leaning as he was not Traywick's supervisor.

Regarding a bottom bunk assignment, Defendant Pettway testified he was unaware of Traywick

having a bottom bunk profile and the procedure for inmates receiving a bottom bunk requires the inmate to present a profile to the appropriate correctional official for a proper bed assignment.  The correctional defendants' evidence further reflects that on arrival at Draper on or about July 22, 2014, Traywick underwent an initial examination and evaluation by medical staff who determined at that time Traywick required no special housing accommodation, no lower bunk accommodation, and could be housed in general population. The record reflects that on August 11, 2014, Traywick received a bottom bunk profile for three months, a work profile for no lifting in excess of ten to fifteen pounds, and no excessive bending, kneeling, standing, squatting, or twisting for six weeks. Those profiles were routinely re-issued. Docs. 28-3, 28-4, 28-5, 28-6; Doc. 58-3 at 3, Doc. 58-4.

Traywick presents an Eighth Amendment claim that the correctional defendants exhibited deliberate indifference to potential harm arising from his initial assignment to a top bunk and a kitchen job. A prison official's duty under the Eighth Amendment is not to provide complete safety; it is to ensure "reasonable safety." *See Farmer*, 511 U.S. at 844, see also *Helling*, 509 U.S. at 33. Therefore, reasonable measures taken to avert known risks will insulate a prison official from Eighth Amendment liability, even if those measures proved unsuccessful. *See Farmer*, 511 U.S. at 844. The question before the court is not whether Traywick's complaints were handled to his satisfaction; it is whether the correctional defendants acted obdurately or wantonly, with a sufficiently culpable state of mind regarding the challenged conditions. *See Jackson v. Cain*, 864 F.2d 1235 (5th Cir. 1989).

Traywick alleges the correctional defendants knew he had back problems but failed to issue him a bottom bunk or limit his work activities. Doc. 76-1. The unrefuted evidence reflects Traywick was given his kitchen job and bunk assignment on July 22, 2014, when he arrived at Draper. He entered the facility without any special needs or special housing accommodation

profiles. Traywick presents no evidence the correctional defendants or any other correctional official involved with his work and bunk assignments when he transferred to Draper knew such assignments would expose him to a serious threat of harm. Even if Traywick could demonstrate the correctional defendants were aware he had back problems at the time of his work and bunk assignment, the evidence before the court falls far short of demonstrating the degree of "deliberate indifference" to Traywick's health or safety because they knew he faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. Additionally, to the extent Traywick experienced any delay between issuance of his lower bunk and work profiles and their implementation (*see* Doc. 58-4), the record evidence does not reflect Defendants knew of an obvious risk of serious harm to him in this regard and disregarded that risk. *Farmer* 511 U.S. at 837–38 ("An official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for condemnation, cannot under our cases be condemned as the infliction of punishment."). Accordingly, the correctional defendants are entitled to summary judgment on this Eight Amendment claim.

## C. The ADA Claim

Traywick conclusorily alleges the correctional defendants violated his rights under the ADA. The court considers Traywick to bring a Title II discrimination claim against the correctional defendants regarding his assignment to a top bunk and a kitchen job which he maintains was beyond his physical capabilities despite his special needs profiles.

The ADA does apply to correctional institutions. *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998). Subchapter II of the ADA bars discrimination by any state or local government entity (that is, discrimination in public services) and affords the remedies outlined in Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. See 42 U.S.C. §§ 12131-12165. Generally, to

establish a prima facie case of disability discrimination under the ADA, a plaintiff must show that: (1) he is disabled; (2) he was a qualified individual at the relevant time; and (3) he was discriminated against because of his disability. *Wood v. Green*, 323 F.3d 1309, 1312 (11th Cir.2003). A plaintiff bringing a disparate-treatment claim under the ADA must allege that the disability actually motivated the challenged decision. *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003).

Here, Traywick's claim fails on the third prong of the prima facie case because he neither alleges discrimination on the basis of any disability he has nor does he offer any proof that any action taken by any correctional defendant was because of or motivated by any disability he may have. The correctional defendants are entitled to summary judgment on this claim.

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The medical defendants' motion to dismiss (Doc. 58) be GRANTED to the extent these defendants seek dismissal of this case due to Plaintiff's failure to properly exhaust an administrative remedy available to him prior to initiating this cause of action;

2. This case against the medical defendants be DISMISSED without prejudice in accordance with the provisions of 42 U.S.C. § 1997e(a) for Plaintiff's failure to properly exhaust an administrative remedy before seeking relief from this court.

3. The correctional defendants' motions for summary judgment (Doc. 28, 64) be GRANTED; and

4. Judgment be entered in favor of Defendants.

It is further

ORDERED that **on or before August 22, 2018**, the parties may file objections to this Recommendation.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made; frivolous, conclusive, or general objections will not be considered.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a de novo determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; see Resolution Trust Co. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993); Henley v. Johnson, 885 F.2d 790, 794 (11th Cir. 1989).

Done this 8th day of August, 2018

/s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE